# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

THERESA MARIA LUJAN,

    Plaintiff,

v.                                                          No. CV 16-400 CG

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Theresa Maria Lujan's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 16), filed December 5, 2016; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision*, (Doc. 18), filed February 1, 2017; and Ms. Lujan's *Reply in Support of Motion to Reverse and Remand for a Rehearing*, (Doc. 21), filed March 6, 2017.

Ms. Lujan filed for disability insurance benefits on October 12, 2012, alleging primarily that arthritis in her neck, feet, hands, and hips limited her ability to work. (Administrative Record "AR" 155). Ms. Lujan's applications were denied initially on March 4, 2013, (AR 56-64), and upon reconsideration on July 9, 2013. (AR 65-73). On September 6, 2013, Ms. Lujan requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 3, 2014, before ALJ John Rolph. (AR 12, 20, 25-55). Ms. Lujan and Nicole King, an impartial vocational expert ("VE"), testified at the hearing. (AR 26). Ms. Lujan was represented at the hearing by her current counsel, Michael Armstrong. (AR 25).

On December 11, 2014, the ALJ issued his written decision finding Ms. Lujan not disabled for purposes of disability insurance benefits. (AR 9-20). Ms. Lujan requested review by the Appeals Council, but her request was denied March 11, 2016, (AR 1), making the ALJ's decision Defendant's final decision for purposes of this appeal.

Ms. Lujan now argues the ALJ committed reversible error by (1) improperly rejecting the findings of examining physician John R. Vigil, M.D.; (2) failing to include a function-by-function analysis in his RFC discussion; and (3) failing to resolve a conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony. (Doc. 16 at 1). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the entire record. For the following reasons, the Court finds Plaintiff's Motion should be **DENIED**.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d

1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

Ms. Lujan filed for disability claiming widespread arthritis, high blood pressure, high cholesterol, and thyroid issues limited her ability to work. (AR 16, 155). At step one, the ALJ found Ms. Lujan had not engaged in substantial gainful activity since October 24, 2012, the date of her alleged disability onset. (AR 14). At step two, the ALJ determined Ms. Lujan had the following severe impairments: bilateral ankle pain with

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

arthropathy; cervical spine problems/cervicalgia; lumbago; left hip problems and pain; and radial styloid tenosynovitis with left DeQuervain's tenosynovitis. (AR 14). Although the record contained evidence of other health issues, the ALJ found them non-severe based on the medical evidence. (AR 14-15). At step three, the ALJ found none of Ms. Lujan's impairments, singly or in combination, met or medically equaled a Listing impairment. (AR 15).

At step four, the ALJ found Ms. Lujan has the RFC to perform a full range of light work with the following limitations: Ms. Lujan must be allowed to sit or stand alternately at thirty to forty-five minute intervals, during which she remains on task, and she may frequently handle and finger with her non-dominant, left upper extremity. (AR 15). In formulating the RFC, the ALJ found that Ms. Lujan's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. (AR 17). Ms. Lujan alleged she could not work primarily because of chronic pain in her neck, lower back, and hands. (AR 17). Yet, the ALJ noted, Ms. Lujan reported she was able to drive, text, shop, volunteer, perform up to three hours of housework a day, and walk two miles without difficulty. (AR 16-17). Further, Ms. Lujan underwent conservative treatment for her pain, which was successful, and x-rays revealed only mild problems. (AR 17-18).

Turning to opinion evidence, the ALJ first considered the opinions of John Vigil, M.D. (AR 18). Dr. Vigil performed a consultative examination and impairment evaluation of Ms. Lujan. (AR 426-33). Dr. Vigil concluded Ms. Lujan "has mild to moderate functional limitations and can work in a sedentary to light duty capacity." (AR 430). Dr. Vigil also completed a check-box style form indicating Ms. Lujan may occasionally lift less than ten pounds, frequently lift less than five pounds, stand or walk at least two

hours in an eight-hour workday, and must periodically alternate between sitting and standing to relieve pain. (AR 432).

The ALJ believed the circumstances surrounding Dr. Vigil's examination, the form of the opinions, and the opinions themselves were problematic. In discussing the evaluation, the ALJ stated

> [d]ays before the hearing, [Ms. Lujan's] attorney provided a physical consultative examination performed by John Vigil, M.D. Dr. Vigil then supplied a list of functional limitations that greatly reduced her capacity to function. Dr. Vigil assessed that her 'disabilities, including her chronic pain' prevent her from working in any work activity above sedentary to light capacity.' The medical opinions . . . are not designed for objective responses, but rather for verification of legal conclusions about the claimant's alleged impairments. Though the form does allow for negative check-off responses (e.g. responses that do not help the claimant's case) as well as positive ones, this does not change the fundamentally suggestive construction of the form.
>
> The opinions listed by Dr. Vigil appear to be intended to further the [Ms. Lujan's] litigation interests rather than provide an objective medical evaluation of her functional limitations because the opinions related to functional limitations are not supported with objective medical findings and are inconsistent with the substantial evidence of record. Dr. Vigil did not have a treating relationship with [Ms. Lujan] and the report relies heavily on her subjective complaints, which have been found to be less than credible.

(AR 18) (citation to the AR omitted). Ultimately, the ALJ assigned Dr. Vigil's opinions "little weight." (AR 18). As for other opinions, the ALJ gave the opinion of Leah Holly, D.O., a state agency consultant, "great weight" and the statements provided from Ms. Lujan's husband "little weight." (AR 18-19).

Finally, the ALJ considered whether Ms. Lujan could perform her past relevant work. (AR 19). Relying on VE testimony, the ALJ concluded Ms. Lujan could perform her past relevant work as an administrative assistant and office clerk. (AR 19). The ALJ acknowledged an inconsistency between the VE's testimony and the DOT. The ALJ

6

thought a reasonable explanation for the discrepancy was that the DOT does not address the alternating sitting and standing limitation in Ms. Lujan's RFC. (AR 19). But, the ALJ adopted the VE's testimony "since it is based on [her] experience." (AR 19). Because the ALJ found Ms. Lujan could perform her past relevant work, he determined Ms. Lujan was not disabled. (AR 20).

## IV. Analysis

Ms. Lujan now argues the ALJ committed three reversible errors: first, by rejecting Dr. Vigil's opinions for illegitimate reasons, (Doc. 16 at 11-14); second, by not first expressing Ms. Lujan's RFC in terms of a function-by-function assessment; (Doc. 16 at 14-16); and finally, by failing to adequately resolve the conflict between the VE's testimony and the DOT, (Doc. 16 at 16-19). The Court will address each in turn.

### 1. *The ALJ did not err in rejecting Dr. Vigil's Opinion*

Ms. Lujan's first argument is that the ALJ erred by rejecting Dr. Vigil's opinion for invalid reasons. Specifically, Ms. Lujan argues one of the reasons the ALJ assigned Dr. Vigil's evaluations little weight, because they "appear[ed] to be intended to further the claimant's litigation interests," was an illegitimate reason. (Doc. 16 at 12). Defendant responds that the ALJ properly weighed Dr. Vigil's opinion and gave good reasons for assigning it little weight. (Doc. 18 at 6).

ALJs are required to evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). In determining how much weight to assign an opinion, ALJs must consider six factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether and to what extent the opinion is supported by relevant evidence; (4) the

consistency of the opinion with the record as a whole; (5) whether the opinion is offered by a specialist; and (6) any other relevant factor brought to the ALJ's attention. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). ALJs need not expressly discuss each of the six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must give "good reasons" that must be "sufficiently specific" to make clear to subsequent reviewers the weight assigned to an opinion and the reasons for that weight. *Watkins*, 350 F.3d at 1200 (citation and quotation omitted). Finally, ALJs may not "'make speculative inferences from medical reports'" and may not reject opinions based on their own credibility judgments, lay opinion, or speculation. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

In this case, as discussed, the ALJ had several misgivings about Dr. Vigil's opinion. The ALJ's decision reflects suspicion of Dr. Vigil because Ms. Lujan was referred to Dr. Vigil by her attorney and because the form Dr. Vigil filled out was "fundamentally suggestive." (AR 18). The ALJ then appears to speculate that Dr. Vigil's opinion was "intended to further" Ms. Lujan's "litigation interests, rather than provide an objective medical evaluation of her functional limitations." (AR 18). However, the ALJ provided four additional reasons for his conclusion: (1) Dr. Vigil's "opinions related to functional limitations are not supported by objective medical evidence;" (2) they "are inconsistent with substantial evidence of record;" (3) "Dr. Vigil did not have a treating relationship" with Ms. Lujan; and (4) "the report relies heavily on her subjective complaints," which the ALJ "found to be less than credible." (AR 18).

8

Although the ALJ's doubts as to Dr. Vigil may have been based on his own speculation or credibility judgment of Dr. Vigil, the ALJ supplied four reasons tied to the relevant factors in support of his assignment of little weight to Dr. Vigil's opinion. The ALJ considered the lack of objective support for Dr. Vigil's opinions, their inconsistency with substantial evidence in the record, the nature and extent of the treatment relationship (or lack thereof), and finally that Dr. Vigil's opinion was substantially based on Ms. Lujan's subjective statements. These are good reasons that are sufficiently specific for the Court to follow the ALJ's reasoning. Accordingly, the Court finds the ALJ did not err in assigning little weight to Dr. Vigil's opinion.

## 2. *The ALJ did not err by failing to perform a function-by-function analysis*

Ms. Lujan next argues that the ALJ erred by failing to include a function-by-function analysis in his RFC and that by doing so the ALJ overlooked Ms. Lujan's limited ability to lift and carry. (Doc. 14-16). Ms. Lujan cites her testimony and Dr. Vigil's opinions as evidence of limitations the ALJ overlooked. (Doc. 16 at 16). In a brief response, Defendant asserts the ALJ discussed each of Ms. Lujan's limitations and the RFC is sufficiently clear for the Court to understand its reasoning. (Doc. 18 at 9-10).

An RFC is "the most" a claimant "can still do despite" her impairments. § 404.1545(a). The ALJ must first assess a claimant's limitations, restrictions, and abilities "on a function-by-function basis," including a claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, and crouch. *See* § 404.1545(b); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "RFC may be expressed in terms of exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in

the national economy." SSR 96-8p, at *3. The concern is, in part, that "without a careful consideration of an individual's functional capacities to support an RFC assessment based on exertional category," the ALJ may "overlook limitations or restrictions that would narrow the ranges and types of work an individual would be able to do." *Id.* at *4. Despite these requirements, the Tenth Circuit Court of Appeals has declined to reverse an ALJ when the ALJ failed to perform the function-by-function analysis. In *Hendron v. Colvin*, the Tenth Circuit affirmed an ALJ who discussed the evidence and supported his RFC determination with substantial evidence notwithstanding his omission of a function-by-function analysis. 767 F.3d 951, 956-57 (10th Cir. 2014).

At step four of his analysis, the ALJ began by discussing Ms. Lujan's RFC in terms of exertional category, stating Ms. Lujan has the RFC to perform a "full range of light work" with some limitation. (AR 15). The ALJ did not specifically discuss Ms. Lujan's ability or inability to sit, stand, carry, lift, or perform any other physical activity in § 404.1545(b). Nonetheless, the ALJ thoroughly discussed Ms. Lujan's allegations, her treatment and its success, and Dr. Vigil's findings. (AR 17-18). Further, the ALJ discounted Ms. Lujan's statements and Dr. Vigil's opinions as not credible, not supported by the record, and not supported by objective medical evidence. (AR 17-18).

Thus, the ALJ did not overlook Ms. Lujan's alleged restrictions or limitations–he rejected them as unsupported by the record. Here, similar to *Hendron*, the ALJ discussed and disregarded the evidence on which Ms. Lujan now relies. *See Hendron*, 767 F.3d at 957; *see also Ryan v. Colvin*, No. CIV 15-0740 KBM, 2016 WL 8230660 *8-9 (D.N.M. Sept. 29, 2016) (unpublished) (discussing *Hendron* and ALJ's RFC as supported by substantial evidence, despite omission of formulaic function-by-function

analysis); *Sherbutt v. Colvin*, No. 15-9034 KBM, 2016 WL 8230646 *9 (D.N.M. July 28, 2016) (unpublished) (same). The Court therefore finds no reversible error in the ALJ's omission of a function-by-function analysis.

### 3. *The ALJ did not err by failing to resolve a conflict*

Ms. Lujan's final argument is that the ALJ erred by failing to adequately resolve the conflict between the VE's testimony and the DOT. According to Ms. Lujan, the VE's testimony and DOT conflict because the DOT does not describe the alternating sitting and standing option the ALJ described in the RFC. (Doc. 16 at 18-19). Defendant counters that although the DOT does not describe the sitting and standing limitation, there is no conflict, and if there is, Ms. Lujan waived it by failing to make it apparent at the hearing. (Doc. 18 at 10-11).

"[B]efore an ALJ may rely on [VE testimony] as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). Conflicts include disagreements about exertional or skill level; for instance, when the DOT describes a job as "medium" work but a VE describes the job as "light," or when the DOT describes a job as "unskilled" and a VE describes the job as "skilled." SSR 00-04p, 2000 WL 1898704, at *3 (Dec. 4, 2000). A conflict does not arise if the VE testifies a claimant may perform a job with restrictions that are not listed in the DOT. "In these circumstances, the VE's testimony does not conflict with the DOT . . . so much as it clarifies how [the DOT's] broad categorizations apply" to a specific case. *Segovia v. Astrue*, No. 05-7008, 226 Fed. Appx. 801, 804 (10th Cir. Mar. 23, 2007) (unpublished) (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)).

11

At the hearing, the ALJ questioned whether the VE familiarized herself with Ms. Lujan's case and jobs that exist in the local, regional, and national economy. (AR 50-51). The VE answered affirmatively, and Ms. Lujan's counsel did not object to the VE's credentials. (AR 51). The ALJ then asked the VE a question involving a hypothetical individual who must be allowed to sit or stand alternately for thirty to forty-five minutes. (AR 52-53). The ALJ asked if such an individual could perform Ms. Lujan's past relevant work. (AR 52). The VE answered that the individual could perform both of Ms. Lujan's past jobs. (AR 52). After other questions, the ALJ inquired whether the VE's testimony was consistent with the DOT. (AR 53). The VE said it was. (AR 54). Finally, the ALJ inquired whether Ms. Lujan's counsel had any questions for the VE; he did not. (AR 54).

In his decision, the ALJ stated the VE's testimony was "inconsistent" with the DOT, but that "there is a reasonable explanation for the discrepancy. The sit stand option is not addressed in the [DOT]." (AR 19). Nonetheless, the ALJ adopted the VE's testimony "since it is based on [her] experience." (AR 19).

Despite the fact that the ALJ identified an "inconsistency" and supplied an explanation for the "discrepancy," the Court finds there is no conflict between the VE's testimony and the DOT. The DOT does not discuss alternating between sitting and standing in Ms. Lujan's past relevant jobs, but that omission does not create a "conflict" as defined by the Tenth Circuit. As discussed, a conflict arises when the VE's testimony contradicts the DOT's exertional or skill requirements. *See Haddock*, 196 F.3d at 1087-88 (conflict between VE testimony and DOT when VE testified claimant could perform light, medium, and heavy jobs when claimant was limited to sedentary work). No conflict arises when a VE testifies that a particular claimant can perform a particular job despite

12

the claimant's restrictions allegedly contradicting the DOT's general job description. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175-76 (10th Cir. 2005) (no conflict where VE testified claimant could perform "fairly solitary jobs" despite RFC restricting interaction with people); *Segovia*, 226 Fed. Appx. at 802-04 (no conflict where VE testified claimant could perform jobs requiring "frequent reaching" when claimant was only limited to "occasional" overhead reaching). Here, Ms. Lujan alleges the latter rather than the former. Because there was no conflict, the ALJ did not err by failing to adequately resolve one.

## V. Recommendation

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and committed no reversible error. **IT IS THEREFORE ORDERED** that the Ms. Lujan's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (Doc. 16), is **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE